[Cite as *State v. Kilbarger*, 2013-Ohio-2577.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY   COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 25584 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 2010-CR-3114/2 |
| v. | : | |
| | : | |
| A. J. KILBARGER, JR. | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 21st day of June, 2013.

. . . . . . . . . .

MATHIAS H. HECK, JR., by APRIL F. CAMPBELL, Atty. Reg. #0089541, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

BRYAN K. PENICK, Atty. Reg. #0071489, Penick & Deters, 1800 Lyons Road, Dayton, Ohio 45458
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

HALL, J.,

        **{¶ 1}** A.J. Kilbarger appeals from his conviction and sentence on charges of possessing

cocaine and marijuana.

{¶ 2}    Kilbarger advances two assignments of error on appeal. First, he contends the trial court erred in denying his pre-trial suppression motion on the basis that a search-warrant affidavit containes false or misleading statements or material omissions in violation of *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). Second, he claims the trial court erred in finding that the affidavit established probable cause for a search warrant.

{¶ 3}    The record reflects that Kilbarger was indicted on the above charges as well as drug trafficking and engaging in a pattern of corrupt activity. The evidence against him was obtained through execution of a search warrant at his home. Agent Charlie Stiegelmeyer of the Ohio Bureau of Criminal Investigation obtained the warrant by presenting the issuing judge with a probable-cause affidavit. Following his indictment, Kilbarger moved to suppress the evidence. He argued that Stiegelmeyer's affidavit contained false or misleading statements or material omissions in violation of *Franks*. He also asserted that the affidavit failed to establish probable cause even absent a *Franks* violation.

{¶ 4}    The trial court held a December 2, 2011 hearing on the *Franks* issue. At the conclusion of the hearing, it held that Kilbarger had "failed to make a preliminary showing by a preponderance of the evidence that the affiant, with an intent to mislead, either excluded crucial information from the affidavit or provided false or misleading information in the affidavit." (*Franks* Tr. at 109). Therefore, the trial court found no viable *Franks* issue and overruled that portion of the suppression motion. (Doc. #112). It separately concluded that Stiegelmeyer's affidavit established probable cause for a search warrant and overruled the remainder of the suppression motion. (Doc. #121). The trial court later denied reconsideration of its *Franks* ruling. (Doc. #138, 141). At trial, a jury acquitted Kilbarger on the drug-trafficking and corrupt-activity

charges but found him guilty of possessing cocaine and marijuana. The trial court imposed an aggregate two-year prison sentence. (Doc. #219). This appeal followed.

{¶ 5} As a means of analysis, we turn first to Kilbarger's second assignment of error. There he contends the trial court erred in finding that Stiegelmeyer's affidavit justified the issuance of a warrant to search his residence for drugs.[1] Kilbarger asserts (1) that the affidavit failed to establish probable cause and (2) that any information related to the presence of drugs in his house was stale.

{¶ 6} "In determining the sufficiency of probable cause in an affidavit submitted in support of a search warrant, '[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *State v. George*, 45 Ohio St.3d 325, 544 N.E.2d 640 (1989), paragraph one of the syllabus, quoting *Illinois v. Gates*, 462 U.S. 213, 238-239, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

{¶ 7} "In reviewing the sufficiency of probable cause in an affidavit submitted in support of a search warrant issued by a magistrate, neither a trial court nor an appellate court should substitute its judgment for that of the magistrate by conducting a de novo determination as to whether the affidavit contains sufficient probable cause upon which that court would issue the search warrant." *Id.* at paragraph two of the syllabus. "Rather, the duty of a reviewing court is

---

[1] For purposes of his second assignment of error, Kilbarger ignores the alleged *Franks* violation. Even considering Stiegelmeyer's entire affidavit, he argues that it falls short of supporting the issuance of a warrant. We will address this argument first because the alleged *Franks* violation is moot if Kilbarger is correct.

simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed. In conducting any after-the-fact scrutiny of an affidavit submitted in support of a search warrant, trial and appellate courts should accord great deference to the magistrate's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant." *Id.*

{¶ 8} With the foregoing standards in mind, we hold that the issuing judge had a substantial basis for finding probable cause to believe drugs would be found inside Kilbarger's home at 508 West Sherry Street in Trotwood. In his June 21, 2010 affidavit, Stiegelmeyer recited his nearly three decades of law-enforcement experience, including fourteen years performing narcotics investigations. (Stiegelmeyer affidavit at ¶1). He then averred that in October 2009 he received information from a confidential informant ("CI") regarding the drug-trafficking activities of McCartney and Kilbarger. (*Id.* at ¶2). The CI advised him that McCartney and Kilbarger "are large cocaine and marijuana traffickers operating in the Montgomery County area." (*Id.* at ¶3). The CI stated that McCartney led the operation and that Kilbarger helped distribute the drugs. (*Id.*). The CI also told Stiegelmeyer that McCartney "uses property owned by Kilbarger and others to conceal assets and narcotics from authorities." (*Id.*). According to the affidavit, the CI "has been proven credible and reliable by making controlled purchases of narcotics" and by "providing information, which was later verified to be true through independent investigative methods by Affiant." (*Id.* at ¶2).

{¶ 9} Stiegelmeyer described an October 2009 controlled buy during which he worked undercover with the CI and purchased a pound of marijuana from McCartney. (*Id.* at ¶5). He recounted a similar incident in April 2010 where the CI participated in a controlled buy and

purchased an ounce of cocaine from McCartney. (*Id*. at ¶6). Although these drug buys involved McCartney rather than Kilbarger, they nevertheless helped establish the CI's veracity.

{¶ 10}  Thereafter, in May 2010, the CI advised Stiegelmeyer that Kilbarger owned a home at 508 West Sherry Street. The CI "stated that McCartney and Kilbarger use this residence to store narcotics and contraband and the CI has been to this residence in the past to purchase narcotics from McCartney and Kilbarger." (*Id*. at ¶7). On appeal, Kilbarger correctly points out the CI's failure to specify *when* he had purchased drugs at 508 West Sherry Street. We note, however, that Stiegelmeyer's rendition of what the CI said was in the present tense in May 2010 when informing Stiegelmeyer that McCartney and Kilbarger "use this residence to store narcotics[.]"

{¶ 11}  Stiegelmeyer also recounted an incident in May 2010 when the CI arranged to purchase two ounces of cocaine from McCartney. Prior to the transaction, agents established surveillance of McCartney's residence and Kilbarger's residence. (*Id*. at ¶8). The agents watched Kilbarger arrive at McCartney's residence and hand McCartney a white paper bag. Agents saw McCartney then leave and meet the CI. According to the affidavit, McCartney was observed handing the CI the same white paper bag, which agents later discovered contained two ounces of cocaine. (*Id*.).  This transaction helped establish the CI's veracity and basis of knowledge with regard to Kilbarger's participation in drug-trafficking activities.

{¶ 12}  Stiegelmeyer also described apparent drug activity involving McCartney and Kilbarger that occurred in June 2010. On that occasion, he directed the CI to purchase two ounces of cocaine from McCartney. (*Id*. at ¶11). As they had done before, agents first established surveillance of McCartney's residence and Kilbarger's residence. They watched McCartney

arrive at Kilbarger's home, enter, and leave a short time later. McCartney returned to his own home, where he stayed briefly before leaving to meet the CI. Agents observed McCartney hand the CI a baggie of cocaine and then return to his home. Kilbarger arrived at McCartney's residence soon thereafter. He met briefly with McCartney and then returned to his home, where he stayed for a short time before leaving again. (*Id*.). Addressing the foregoing movements of McCartney and Kilbarger, Stiegelmeyer opined that "through his training and experience this pattern reflects patterns used by narcotics organizations when distributing narcotics and transporting money after the sale of narcotics." (*Id*.).

{¶ 13} Finally, Stiegelmeyer's affidavit contained the following summation:

Affiant is a trained narcotics investigator with over 27 years [of] law enforcement experience with the last 14 years being dedicated to investigating narcotics offenses. Your Affiant has obtained information from a proven credible and reliable informant that Robert McCartney and A.J. Kilbarger are operating a large scale marijuana and cocaine distribution organization which operates in the Montgomery County, Ohio area. Affiant has independently corroborated information supplied by the confidential informant through other investigative methods and has made undercover and controlled purchases of marijuana and cocaine from McCartney and Kilbarger to support these claims. Affiant submits that the mention[ed] addresses are presently being used to facilitate drug trafficking or are being used to conceal narcotics, contraband, or assets obtained from the sale of narcotics from authorities and requests permission from the court to search these mentioned areas for evidence of the crimes listed.

(*Id*. at ¶18).[2]

{¶ 14} In our view, Stiegelmeyer's affidavit provided the issuing judge with a substantial basis for finding probable cause to believe drugs would be found inside Kilbarger's home. Beginning in October 2009, the CI informed Stiegelmeyer that McCartney and Kilbarger were large-scale drug traffickers. Thereafter, in October 2009 and April 2010, the CI purchased marijuana and cocaine from McCartney. In May 2010, approximately one month before the warrant was obtained, the CI advised Stiegelmeyer that McCartney and Kilbarger "use" Kilbarger's residence at 508 West Sherry Street to store drugs. Also in May 2010, again approximately one month before the warrant was obtained, agents saw Kilbarger hand McCartney a white paper bag that was found to contain two ounces of cocaine. In June 2010, the same month the warrant was obtained, agents watched as McCartney and Kilbarger engaged in a pattern of travel that Stiegelmeyer reasonably inferred was indicative of drugs being transported from Kilbarger's home for sale by McCartney to the CI and drug money subsequently being deposited at Kilbarger's home.

{¶ 15} . Based on our review of Stiegelmeyer's affidavit, we believe it adequately established the CI's veracity and basis of knowledge. The affidavit also reflected that Stiegelmeyer and other agents witnessed known and apparent drug activity involving both McCartney and Kilbarger shortly before the warrant was obtained. As for the presence of drugs in Kilbarger's home, the CI stated that McCartney and Kilbarger were large-scale drug traffickers

---

[2] For purposes of our analysis, we have focused primarily on the portions of Stiegelmeyer's affidavit relevant to drug activity involving Kilbarger and the presence of drugs at his residence. Because the affidavit was used to obtain search warrants for multiple locations, it also contains information about other addresses and vehicles where Stiegelmeyer believed drugs would be found. We have not discussed those averments, however, given that Kilbarger is challenging only the warrant to search his home.

and that he previously had purchased drugs from 508 West Sherry Street. Significantly, he identified 508 West Sherry Street in May 2010 as a location McCartney and Kilbarger "use" to store drugs. Moreover, Kilbarger's travel pattern on the day of the June 2010 controlled buy supports a reasonable inference that he obtained cocaine from 508 West Sherry Street for McCartney to sell to the CI. Viewed together, the foregoing facts reasonably support a finding that probable cause to search 508 West Sherry Street existed on June 21, 2010, when Stiegelmeyer sought a warrant, and that the information in the affidavit regarding Kilbarger's residence was not impermissibly stale. At a minimum, the issuing judge had a "substantial basis" for finding a "fair probability" that drugs would be found inside 508 West Sherry Street. *George*, 45 Ohio St.3d at 330. Accordingly, the second assignment of error is overruled.

{¶ 16}  We turn now to the first assignment of error. There Kilbarger contends the trial court erred in denying his motion to suppress the evidence against him based on a *Franks* violation. He advances three arguments in support, First, he claims the trial court should have granted him a "full hearing" on the *Franks* issue. Second, he asserts that he presented enough evidence at the "initial hearing" to establish a *Franks* violation even without a full hearing. Third, he maintains that the trial court erred in denying a motion for reconsideration he filed after the hearing.

{¶ 17}  "Pursuant to *Franks*, a search violates the Fourth Amendment's prohibition on unreasonable searches if it is conducted pursuant to a warrant that is based upon an affidavit containing one or more material misrepresentations, and these misrepresentations were made knowingly or in reckless disregard for the truth." (Citations omitted.) *State v. Miser*, 2d Dist. Montgomery No. 25105, 2013-Ohio-1583, ¶12. "'Reckless disregard' means that the affiant had

serious doubts of an allegation's truth. * * * Omissions count as false statements if 'designed to mislead, or * * * made in reckless disregard of whether they would mislead, the magistrate.'" (Citations omitted.) *Id.* "'[E]xcept in the very rare case where the defendant makes a strong preliminary showing that the affiant with an intention to mislead excluded critical information from the affidavit, and the omission is critical to the finding of probable cause, *Franks* is inapplicable to the omission of disputed facts.'" (Citation omitted.) *State v. Blaylock*, 2d Dist. Montgomery No. 24475, 2011-Ohio-4865, ¶15.

{¶ 18}   "[W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." *Franks*, 438 U.S. at 155-156, 98 S.Ct. 2674, 57 L.Ed.2d 667. "In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." *Id.* at 156.

{¶ 19}   In the present case, the trial court held a lengthy hearing on the *Franks* issue raised in Kilbarger's suppression motion.[3] The sole witness was agent Stiegelmeyer, the affiant. Defense counsel questioned Stiegelmeyer in detail about the content of his search-warrant affidavit. On appeal, Kilbarger characterizes this hearing as an "initial hearing." He asserts that

---

[3] The hearing transcript is 125 pages long.

he made a substantial enough showing of material misrepresentations, false statements, and omissions during that hearing to warrant a "full hearing."

{¶ 20}   Having reviewed the record, we are unsure how a subsequent "full hearing" would have differed from the "initial hearing" or what additional evidence could have been offered. We recognize, however, that the trial court itself treated the hearing it held as an initial one, the stated purpose of which was to determine the need for "a full-blown *Franks* hearing[.]" (*Franks* Tr. at 104). As set forth above, the trial court ruled against Kilbarger at the conclusion of the December 2, 2011 hearing, holding that he had "failed to make a preliminary showing by a preponderance of the evidence that the affiant, with an intent to mislead, either excluded crucial information from the affidavit or provided false or misleading information in the affidavit." (*Id*. at 109). Therefore, it held no additional hearing.

{¶ 21}   On appeal, Kilbarger first contends the trial court applied the wrong standard when denying him a "full hearing." He cites *Franks* for the proposition that a "full hearing" is required if a defendant makes a "substantial preliminary showing" of a *Franks* violation based on more than conclusory allegations or a desire to cross examine. Kilbarger appears to claim the trial court erred in applying a higher, preponderance-of-the-evidence standard and in omitting the "reckless disregard" portion of the test set forth in *Franks*.

{¶ 22}   Upon review, we find no reversible error. Despite the distinction Kilbarger draws between "initial" and "full" *Franks* hearings, in our view, after a substantial preliminary showing has been made, the U.S. Supreme Court's opinion in *Franks* contemplates one evidentiary hearing:

> * * * To mandate an evidentiary hearing, the challenger's attack must be

more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant. Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required. On the other hand, if the remaining content is insufficient, the defendant is entitled, under the Fourth and Fourteenth Amendments, to his hearing.* * *

*Franks*, 438 U.S. at 171-172, 98 S.Ct. 2674, 57 L.Ed.2d 667.

{¶ 23} We find nothing in *Franks* that obligates a trial court to hold two evidentiary hearings, an "initial" one and a "full" one, particularly where, as here, the affiant testified in detail and was subjected to extensive cross examination. In any event, the trial court and the parties contemplated a subsequent "full-blown *Franks* hearing" if Kilbarger met the applicable legal standard. Although the trial court only recited part of the standard for obtaining a hearing under *Franks*, we see no basis to reverse. When reviewing a ruling on a suppression motion, we

apply the applicable legal standard without deference to the trial court. *State v. Choice*, 2d Dist. Montgomery No. 25131, 2013-Ohio-2013, ¶45 (recognizing that an appellate court must determine "as a matter of law and without deference to the trial court's legal conclusion, whether the applicable legal standard is satisfied"). Here our de novo application of the *Franks* standard for obtaining a hearing will cure any alleged defect in the application of that standard below.[4]

{¶ 24}   In our view, Kilbarger failed to make "a substantial preliminary showing" that a false statement (or omission), necessary to a finding of probable cause, was knowingly, intentionally, or recklessly included in (or omitted from) Stiegelmeyer's affidavit. *See   Franks* at 155-156. Therefore, even if the December 2, 2011 hearing was only a preliminary one, the trial court did not err in refusing to hold a "full-blown *Franks* hearing."

{¶ 25}   On appeal, Kilbarger alleges nine instances of false or misleading statements in Stiegelmeyer's affidavit. First, he challenges an averment in paragraph two that a reliable and credible CI informed Stiegelmeyer in October 2009 about drug-trafficking activity involving McCartney and Kilbarger. During the December 2, 2011 hearing, Stiegelmeyer conceded that this information about Kilbarger being involved in drug trafficking had not been verified in October or November 2009. (*Franks* Tr. at 67-69). But paragraph two does not indicate otherwise. It says that the CI *told* Stiegelmeyer about the drug-trafficking activity in October 2009, not that Stiegelmeyer verified it then.

---

[4] In *U.S. v. Fowler*, 535 F.3d 408 (6th Cir.2008), the Sixth Circuit Court of Appeals noted that "the standard of review with respect to the denial of a *Franks* hearing is unsettled." *Id.* at 415, fn. 2. "Some circuits employ a clear error standard, while others review the denial de novo." *Id.* Where the "more exacting [de novo ] standard of review is satisfied," an appellate court need not resolve the dispute. *Id.* We find that to be the case here. As will be explained more fully above, applying de novo review and adopting the legal standard articulated in *Franks*, we conclude that Kilbarger failed to make the "substantial preliminary showing" required to obtain an evidentiary hearing on the alleged misrepresentations under *Franks*.

**{¶ 26}** Second, Kilbarger challenges an averment in paragraph three that the CI informed Stiegelmeyer in October 2009 that McCartney and Kilbarger were large cocaine and marijuana traffickers. Kilbarger stresses Stiegelmeyer's admission during the hearing that he had not verified Kilbarger's status as a drug trafficker in October 2009. Again, however, paragraph three does not say Stiegelmeyer verified this information in October 2009. It says only that he received it.

**{¶ 27}** Third, Kilbarger challenges an averment in paragraph three that the CI told Stiegelmeyer in October 2009 that McCartney was the leader of the drug operation and Kilbarger was a distributor. Kilbarger claims this statement is false because he did not become part of Stiegelmeyer's "investigation" until May 2010. We disagree. During the hearing, Stiegelmeyer testified that Kilbarger's name did not appear in any of the agents' investigative reports until May 2010. (*Franks* Tr. at 82-83). This testimony does not conflict with the averment in paragraph three, which was also consistent with Stiegelmeyer's in-court testimony, about what the CI told Stiegelmeyer in October 2009.

**{¶ 28}** Fourth, Kilbarger challenges an averment in paragraph seven about the CI telling Stiegelmeyer in May 2010 that Kilbarger's residence was used to store narcotics. Kilbarger characterizes this statement as false because it does not specify *when* narcotics were stored there or when the CI visited. But omitting when the CI visited Kilbarger's home or when drugs were stored there did not make the averment false. It only made it less specific and, perhaps, less useful than it otherwise might have been.

**{¶ 29}** Fifth, Kilbarger challenges an averment in paragraph seven that the CI had been to 508 West Sherry Street "in the past to purchase narcotics[.]" Kilbarger claims this statement is

false or misleading because Stiegelmeyer admitted during the hearing that he never asked when the CI last visited. Once again, however, the fact that the affidavit did not mention when the CI purchased drugs at Kilbarger's home did not make it false or misleading. It made the affidavit non-specific and, to that extent, less helpful than it otherwise might have been.

{¶ 30} Sixth, Kilbarger challenges an averment in paragraph eight about agents seeing him hand McCartney a white paper bag containing two ounces of cocaine. Kilbarger claims this statement is false because the agents did not know what the bag contained when he handed it to McCartney. This argument lacks merit. Agents watched Kilbarger hand McCartney a white McDonald's bag. Shortly thereafter, they then watched McCartney hand a white McDonald's bag to the CI. The agents then discovered that the bag contained cocaine. It is, of course, *possible* that the bag did not contain cocaine when Kilbarger handed it to McCartney. For purposes of a probable-cause affidavit, however, we believe Stiegelmeyer reasonably inferred that it did.

{¶ 31} Kilbarger's seventh and eighth arguments challenge averments regarding GPS tracking devices in vehicles he and McCartney drove. Kilbarger disputes Stiegelmeyer's claim in paragraphs nine and ten of his affidavit that the GPS tracking devices recorded activity suggestive of drug-trafficking activity. Although we are not persuaded that anything in paragraphs nine and ten violated *Franks*, Kilbarger's argument about the tracking-device averments fails to demonstrate a right to a *Franks* hearing for a more fundamental reason. Specifically, in our analysis above finding that Stiegelmeyer's affidavit established probable cause, we neither cited nor relied on the averments in paragraphs nine and ten about GPS tracking devices. Because those averments played no role in our probable-cause determination, their inclusion in the affidavit cannot warrant a *Franks* hearing. *See Franks*, 438 U.S. at 171-172,

98 S.Ct. 2674, 57 L.Ed.2d 667 (recognizing that "if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required").

**{¶ 32}** Ninth, Kilbarger challenges an averment in paragraph eighteen that Stiegelmeyer had "made undercover and controlled purchases of marijuana and cocaine from McCartney and Kilbarger[.]" During the hearing, Stiegelmeyer admitted that he personally never had purchased drugs from Kilbarger. (*Franks* Tr. at 96). Stiegelmeyer explained, however, that when he mentioned purchasing drugs from McCartney and Kilbarger, he meant "as a group—as a conspiracy level we have made purchases of narcotics from this organization." (*Id.* at 95). Although the paragraph could have been worded better, even if paragraph eighteen is viewed as misleading or incomplete, it fails to warrant a *Franks* hearing. As with the GPS tracking-device averments, we did not rely on Stiegelmeyer's averment about purchasing drugs from Kilbarger when we earlier determined that the search-warrant affidavit established probable cause. *See*, *supra*, at ¶14-15. Therefore, inclusion of the disputed averment in the affidavit cannot merit a *Franks* hearing.

**{¶ 33}** In a final argument on appeal, Kilbarger contends the trial court erred in overruling a motion he filed seeking reconsideration of the *Franks* issue. (Doc. #138, 141). The motion was based on an investigative report Kilbarger received after the December 2, 2011 hearing. On appeal, he claims the report establishes that he did not become a suspect until after May 12, 2010. He argues that this fact demonstrates Stiegelmeyer's intent to mislead the issuing judge into granting a warrant on the basis that he "was always a suspect[.]"

**{¶ 34}** Upon review, we find no error in the trial court's denial of reconsideration.

During the *Franks* hearing, Stiegelmeyer *admitted* that Kilbarger's name did not appear in any of the agents' investigative reports until May 2010. (*Franks* Tr. at 82-83). As noted above, this testimony does not conflict with Stiegelmeyer's averment in paragraph three of his affidavit about what the CI told him in October 2009. Moreover, we agree with the trial court's finding that nothing in the investigative report "support[s] the assertion that Stiegelmeyer's first involvement with the Defendant" occurred in May 2010. In short, the report containing Kilbarger's name does not call into question the veracity of any averments in Stiegelmeyer's probable-cause affidavit. Accordingly, the trial court properly denied reconsideration. Kilbarger's first assignment of error is overruled.

{¶ 35}    The judgment of the Montgomery County Common Pleas Court is affirmed.

. . . . . . . . . . . . .

FAIN, P.J., and DONOVAN, J., concur.

Copies mailed to:

Mathias H. Heck
April F. Campbell
Bryan K. Penick
Hon. Dennis J. Adkins