[Cite as *State v. Corwin*, 2016-Ohio-4718.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

STATE OF OHIO                                    :
                                                 :
    *Plaintiff-Appellee*                          :      Appellate Case No. 26690
                                                 :
v.                                               :      Trial Court Case No. 2014-CR-1458/2
                                                 :
JEREMY CORWIN                                    :      (Criminal Appeal from
                                                 :      Common Pleas Court)
    *Defendant-Appellant*                        :
                                                 :

. . . . . . . . . .

O P I N I O N

Rendered on the 30th day of June, 2016.

. . . . . . . . . .

MATHIAS H. HECK, JR., by CHRISTINA E. MAHY, Atty. Reg. No. 0092671, Assistant
Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division,
Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
      Attorney for Plaintiff-Appellee

GARY SCHAENGOLD, Atty. Reg. No. 0007144, 4 East Schantz Avenue, Dayton, Ohio
45409
      Attorney for Defendant-Appellant

. . . . . . . . . . . . .

WELBAUM, J.

{¶ 1} In this case, Defendant-Appellant, Jeremy Corwin, appeals from his convictions and sentences. After pleading no contest to all twelve counts in the indictment, which involved drug possession, drug trafficking, and engaging in a pattern of corrupt activity, Corwin was sentenced to concurrent terms totaling nine years in prison.

{¶ 2} In support of his appeal, Corwin contends that the trial court erred in overruling his request for a hearing under *Franks v. Delaware*, 438 U.S. 154, 171, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). Corwin also contends that the procedure the trial court used in deciding the *Franks* issue violated due process. Finally, Corwin contends that the trial court erred in denying his motion to suppress evidence obtained as the result of an illegal search warrant.

{¶ 3} We conclude that the trial court did not err in overruling the motion for a *Franks* hearing, as there was no evidence that the affiant knew of the falsity of any statements in the affidavit for the search warrant, nor was there evidence that the affiant acted with reckless disregard for the truth. The trial court also did not deprive Corwin of due process, as the right to a hearing under *Franks* is limited, and Corwin was able to present evidence to the trial court. Finally, the trial court did not err in denying the motion to suppress evidence gathered from a search of Appellant's premises. The affidavit provided the issuing judge with a substantial basis for concluding that probable cause existed. Even if the affidavit did not satisfy requirements for probable cause, the motion to suppress was properly denied because the police officer's reliance on the judge's probable cause determination and on the technical sufficiency of the warrant was objectively reasonable. Accordingly, the judgment of the trial court will be affirmed.

## I. Facts and Course of Proceedings

**{¶ 4}** The charges against Corwin arose from an investigation of a large-scale drug trafficking operation being conducted in several counties, including Montgomery County, Ohio. During the course of the investigation, Detective Dan Schweitzer, who was assigned to the Warren County Drug Task Force, learned that a major marijuana drug organization was based in Vandalia, Ohio, and had ties to Oregon, California, Indiana, Florida, Colorado, and cities in Ohio, including Dayton, Columbus, and Springfield. The organization's hierarchical structure included Bradley O'Neal as head, Corwin as second-in-command, and William Murphy as third-in-command. Other individuals were also involved.

**{¶ 5}** The surveillance that led to the search warrant that was issued in this case began in March 2013 and lasted through November 2013, and included activities of the Drug Enforcement Agency ("DEA") and the Task Force, as well as individuals who dealt with the organization, including confidential informants CI 585 and CI 586.

**{¶ 6}** In March 2013, the DEA seized about 8.5 pounds of marijuana and more than $24,000 in Indianapolis, at the residence of Matthew Lee. Lee told the DEA that Corwin was his supply source for hydroponic marijuana, and that he and Corwin had made several trips to California and Oregon to pick up marijuana. O'Neal was also involved in these trips. Lee described Corwin as driving a maroon Ford Explorer that had a hidden compartment under the third row seat.

**{¶ 7}** In late August 2013, Detective Schweitzer interviewed CI 586, who stated that "Brad" and "Jeremy" (later identified as O'Neal and Corwin) got 200 to 300 pounds

of hydroponic marijuana at a time from Oregon and California.

{¶ 8} Another informant, CI 585, also told Detective Schweitzer that O'Neal traveled to Oregon and obtained 200 to 300 pounds of marijuana at a time, and that Corwin would accompany O'Neal. In early October 2013, CI 585 showed law enforcement a drug route, and described operations CI 585 had witnessed. CI 585 also showed law enforcement houses associated with the operation, including residences on South Patterson Boulevard in Dayton, Ohio, and Gabriel Street in Vandalia, Ohio.

{¶ 9} Essentially, once the marijuana was obtained in large quantities, it would be taken to a place called "the Farm" in Bellefontaine, Ohio, where it would be broken down into one-pound bags and would then be transported elsewhere. O'Neal would take the first 200 pounds from the load to an individual in Columbus, Ohio. The residence on South Patterson was used as a "stash house," and O'Neal, as well as others, lived at the Gabriel Street location. CI 585 also informed the police about vehicles that were used by O'Neal and Corwin, but were titled to others. These vehicles included a 2013 white Ford Explorer owned by O'Neal, and a black Audi and a black Cadillac Escalade owned by Corwin.

{¶ 10} CI 585 told the police that on September 22, 2013, O'Neal, while driving the 2013 white Ford Explorer, arrived at a location in Urbana, Ohio, with 100 pounds of marijuana. Murphy also had 100 pounds of marijuana in his vehicle. Subsequently, four vehicles, including one containing Corwin, traveled to Columbus, Ohio, and the men, including O'Neal, Murphy, and Corwin, delivered the 200 pounds of marijuana to a garage at an address on Dennison Avenue. CI 585 saw a large duffle bag of cash in the garage, which at the price per pound of marijuana, would have contained about $500,000.

{¶ 11} CI 585 also described a trip he and Corwin took to Indiana to sell 20 pounds of marijuana. In late October and early November, Detective Schweitzer also made undercover drug purchases of substantial amounts of marijuana and hashish from an individual (Casey Oakes) who identified O'Neal's organization as his supplier. Oakes verified details Schweitzer already knew about the organization. Schweitzer then purchased Hashish from Oakes on November 22, 2013, and showed him $100,000 in cash. An arrangement was made for Schweitzer to purchase 100 pounds of marijuana on November 25, 2013.

{¶ 12} A vehicle titled to Corwin listed Corwin's residence as 2124 Pittsfield Street. The other vehicles owned by Corwin but titled to others, were seen, during spot surveillance, at both the "stash house" and at the Pittsfield Street address. CI 585 also told Detective Schweitzer that he/she had seen about 200 pounds of marijuana inside the Pittsfield Street residence.

{¶ 13} On November 25, 2013, Detective Schweitzer prepared four affidavits and search warrants, including warrants to search the residences on Gabriel Street, South Patterson Boulevard, and Pittsfield Street. The warrants were signed by a judge and were executed the same day.

{¶ 14} On August 8, 2014, Corwin was indicted on twelve counts, including one count of Participating in a Pattern of Corrupt Activity, two counts of Possession of Marijuana, two counts of Trafficking in Marijuana, three counts of Possession of Hashish, three counts of Trafficking in Hashish, and one count of Having a Weapon under Disability (one first-degree felony; two second-degree felonies, seven third-degree felonies, one fourth-degree felony, and one fifth-degree felony). Corwin pled not guilty, and filed

motions to suppress evidence obtained from the search of the Pittsfield Street and South Patterson residences. At a hearing held in October 2014, the trial court set a briefing schedule so that the parties could address whether a hearing should be held under *Franks*, 438 U.S. 154, 171, 98 S.Ct. 2674, 57 L.Ed.2d 667. Although Corwin never made a written request for such a hearing, the parties have stipulated that the issue arose at a conference in chambers, off the record, and that the trial court determined the issue as if a written request had been made.

{¶ 15} In December 2014, the trial court denied the request for the *Franks* hearing. The court also overruled Corwin's motions to suppress on January 20, 2014. Corwin then pled no contest to all the charges in March 2015. After merging some of the charges, the court sentenced Corwin to concurrent sentences on all charges, and to a total of nine years in prison. Corwin now appeals from his convictions and sentences.


II. The Request for a *Franks* Hearing

{¶ 16} Corwin has combined his discussion of the First and Second Assignments of Error, and we will do the same. Corwin's First Assignment of Error states that:

The Trial Court Erred in Overruling Appellant's Request for a *Franks* Hearing.

{¶ 17} Corwin's Second Assignment of Error states that:

In the Context of the Procedure Utilized by the Trial Court in Considering Appellant's Request for a *Franks* Hearing, the Trial Court's Determination of Whether Appellant's Proffer of Evidence Established a Substantial Preliminary Showing of Falsity Failed to Comport with Due

Process.

{¶ 18} Under these assignments of error, Corwin contends that the trial court erred by holding an abbreviated hearing, and by refusing to let him cross-examine Detective Schweitzer or to present witnesses. Corwin also maintains that the evidence warranted a hearing.

{¶ 19} Crim.R. 41(C)(1) provides, with respect to warrants, that:

A warrant shall issue on either an affidavit or affidavits sworn to before a judge of a court of record or an affidavit or affidavits communicated to the judge by reliable electronic means establishing the grounds for issuing the warrant. In the case of a search warrant, the affidavit shall name or describe the person to be searched or particularly describe the place to be searched, name or describe the property to be searched for and seized, state substantially the offense in relation thereto, and state the factual basis for the affiant's belief that such property is there located.

{¶ 20} "In determining the sufficiency of probable cause in an affidavit submitted in support of a search warrant, [an issuing magistrate's task] * * * 'is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.' " *State v. George*, 45 Ohio St.3d 325, 544 N.E.2d 640 (1989), paragraph one of the syllabus, quoting *Illinois v. Gates*, 462 U.S. 213, 238-239, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). "The affidavit underlying a search warrant is sufficient to support a finding of probable cause if, based on the totality of the

circumstances, it provided the magistrate with a substantial basis for concluding that there was probable cause to issue the warrant." *United States v. Fowler*, 535 F.3d 408, 414 (6th Cir.2008), citing *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

**{¶ 21}** However, "where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." *Franks*, 438 U.S. at 155-56, 98 S.Ct. 2674, 57 L.Ed.2d 667. Furthermore, if the defendant establishes the perjury allegation or reckless disregard by a preponderance of the evidence at the hearing, and if, with the false material set aside, "the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." *Id.* at 156.

**{¶ 22}** In *Franks*, the United States Supreme Court stressed that for an evidentiary hearing to be mandated:

> [T]he challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses

should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant. Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required. On the other hand, if the remaining content is insufficient, the defendant is entitled, under the Fourth and Fourteenth Amendments, to his hearing.

*Franks* at 171-172.

{¶ 23} " 'Reckless disregard' means that the affiant had serious doubts of an allegation's truth." *State v. Waddy*, 63 Ohio St.3d 424, 441, 588 N.E.2d 819 (1992), citing *United States v. Williams*, 737 F.2d 594, 602 (7th Cir.1984).

{¶ 24} The standard of review of denials of a *Franks* hearing is unsettled, with some federal circuit courts applying a "clear error" standard, and others applying a "de novo" standard. *State v. Kilbarger*, 2d Dist. Montgomery No. 25584, 2013-Ohio-2577, ¶ 23, fn. 4, citing *Fowler*, 535 F.3d at 415, fn.2 (6th Cir.2008). However, regardless of the standard used, we find no error on the trial court's part.

{¶ 25} As was noted, Corwin argues that the trial court's refusal to let him cross-examine Detective Schweitzer unfairly inhibited his ability to make the threshold showing required under *Franks*. However*, Franks* stressed that the challenge must be premised on more than a desire to cross-examine. *Franks*, 438 U.S. at 171, 98 S.Ct. 2674, 57

L.Ed.2d 667. *Accord State v. Jones*, 90 Ohio St.3d 403, 412, 739 N.E.2d 300 (2000). Moreover, Corwin did file his own affidavit, and nothing prevented him from presenting affidavits of other witnesses.

{¶ 26} In addition, courts have rejected the assertion that "any interference with the defendant's ability to mount [a *Franks*] challenge is impermissible," and that defendants have "an unlimited right to access all information possibly needed to meet the preliminary showing requirement" in *Franks*. *United States v. Napier*, 436 F.3d 1133, 1136 (9th Cir.2006). In *Napier*, which involved access to records that could identify a confidential informant, the court stressed the need to balance the right outlined in F*ranks* with the harm that could result from disclosure. *Id.* More importantly, the court stressed that the argument for an absolute right was "further weakened" by the fact that "due process requirements at suppression hearings are less elaborate and demanding than those at trial." *Id.* at 1136-37, citing *United States v. Raddatz*, 447 U.S. 667, 679, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980).

{¶ 27} Specifically, in criminal trials, the need for a confidential privilege is outweighed by the need for truthful verdicts, while in suppression hearings, defendants are seeking to enforce the 4th Amendment. *Id*. at 1137, citing *McCray v. Illinois*, 386 U.S. 300, 307, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967). " 'The very purpose of a motion to suppress is to escape the inculpatory thrust of evidence in hand, not because its probative force is diluted in the least by the mode of seizure, but rather as a sanction to compel enforcement officers to respect the constitutional security of all of us under the Fourth Amendment. If the motion to suppress is denied, defendant will still be judged upon the untarnished truth.' " *Id.*, quoting *McCray* at 307.

{¶ 28} The case before us does not involve attempts to learn the identity of a confidential informant; in fact, Corwin's affidavit indicates that he knew the informant's identity. Nonetheless, the above remarks about suppression hearings apply with equal force here.

{¶ 29} At the brief hearing that was held, the trial court allowed defense counsel to cross-examine Detective Schweitzer, but limited the questioning to Schweitzer's execution of the affidavit and the judge's execution of the warrant. Transcript of Proceedings, pp. 19 and 23.

{¶ 30} The cross-examination by Corwin's counsel at the hearing disclosed that Schweitzer learned during his investigation that Corwin had signed a lease on the Pittsfield Street address. This was beyond the scope of the trial court's limitation, but was nonetheless brought to the trial court's attention by Corwin. In addition, the trial court verified that the information presented to the issuing judge was limited to the content of the affidavit.

{¶ 31} Subsequently, Corwin presented the following information to the trial court through defense counsel's unverified statement: Detective Schweitzer called defense counsel on November 12, 2014, and indicated that the informant (CI 585) had seen 200 pounds of marijuana inside the Pittsfield residence. During this call, Schweitzer also said that he made no contemporaneous record of the conversation; that no records of the informant's statement existed outside the affidavit; that the informant's statement about the marijuana probably occurred in November 2013, but he was not sure; and that the informant did not tell him when he had seen the marijuana inside the premises. Defendant Jeremy Corwin's Third Motion to Suppress, Doc. #36, p. 3.

{¶ 32} In addition, Corwin stated in an affidavit that the identity of CI 585 clearly was Brandon Oakes; that Oakes was never inside the premises at Pittsfield Street, and that to his knowledge, 200 pounds of marijuana was never inside the premises.

{¶ 33} In rejecting the request for a *Franks* hearing, the trial court concluded that even if the informant had misrepresented the information about the marijuana, there was no indication in either Corwin's motion or affidavit that Detective Schweitzer knew the information was false or had recklessly disregarded the statement's truthfulness. This conclusion was appropriate. *See Searing v. Hayes*, 684 F.2d 694, 697 (10th Cir.1982) (rejecting a *Franks* challenge where, even though the defendant had furnished affidavits indicating that an informant could not have seen contraband, the defendant did not offer evidence that the affiant knew of this or recklessly disregarded the informant's inability to see the contraband). *See also Waddy*, 63 Ohio St.3d at 441, 588 N.E.2d 819 (reaching a similar conclusion).

{¶ 34} Assuming for purposes of argument that the statement in the affidavit was false and that Detective Schweitzer would have testified as averred by defense counsel, there is no indication that the detective knew of the statement's falsity or that he was reckless in that regard. The affidavit details a lengthy investigation conducted between March and November 2013, involving both state and federal law enforcement agencies. Corwin's involvement as an integral participant and a high-ranking member of the drug ring was confirmed by multiple sources, including CI 585, who had direct contact with Corwin. Schweitzer indicated in the affidavit that CI 585 was believed to be truthful and had provided information that had been corroborated by law enforcement and other means. The affidavit contains descriptions of the corroboration, including verification of

Corwin's identity as a participant by other sources; registration verification of information about vehicles and property identified by CI 585 that were placed in other parties' names; Schweitzer's own verification, though "spot check surveillance" and direct observation, of information given to him by CI 585; and Schweitzer's own drug purchases made from an individual in the drug ring who had previously been identified by CI 585. Defendant Jeremy Corwin's Third Motion to Suppress, Doc. #36, Affidavit for Search Warrant, ¶s 7, 8, 9, 11, 12, 18, 27, 29-30, 31, 34, 37-38, 43-44, 46-48, 57, 58, 61, 62, 63, 65, 66, 70, and 71.[1] The content of the affidavit also indicates that CI 585 demonstrated very detailed knowledge about the workings of the drug ring and Corwin's involvement.

{¶ 35} Accordingly, there is no indication that Detective Schweitzer knew of the alleged falsity of CI 585's statement about having seen drugs at Corwin's residence on Pittsfield Street, or that Schweitzer was reckless in that regard.

{¶ 36} Corwin has also complained about Detective Schweitzer's omission in the affidavit of the date on which CI 585 had seen the 200 pounds of marijuana at the Pittsfield residence. In this regard, we have previously adopted a test from the Sixth Circuit Court of Appeals, which held that omissions will trigger a *Franks* hearing only in " 'rare instances.' " *State v. Blaylock*, 2d Dist. Montgomery No. 24475, 2011-Ohio-4865, ¶ 15-16, quoting *Mays v. City of Dayton*, 134 F.3d 809, 815 (6th Cir.1998). This test indicates that " 'except in the very rare case where the defendant makes a strong preliminary showing that the affiant with *an intention to mislead* excluded critical information from the

---

[1] Corwin attached a copy of the affidavit to his motion to suppress and numbered the paragraphs for ease of reference. A certified copy of the affidavit was also admitted by the trial court as Ex. 4 during the hearing. *See* Transcript of Proceedings, pp. 22 and 24. For purposes of convenience, we have referred to the paragraphs as they were numbered in the affidavit attached to Corwin's motion.

affidavit, and the omission is critical to the finding of probable cause, *Franks* is inapplicable to the omission of disputed facts.' " (Emphasis sic.) *Id.* at ¶ 15, quoting *Mays* at 816.

{¶ 37} As was noted, there was no evidence that the detective had an intention to mislead, and Corwin's argument, therefore, fails to satisfy the first prong of the test. We also note that *Mays* contains an extended discussion of the reasons why the due process rationale of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), does not extend to the search warrant situation. In this regard, the Sixth Circuit Court of Appeals observed that in contrast to a *Brady* situation, "the probable cause determination in *Franks*, derived from the Fourth Amendment, involves no definitive adjudication of innocence or guilt and has no due process implications. Because the consequences of arrest or search are less severe and easier to remedy than the consequences of an adverse criminal verdict, a duty to disclose potentially exculpatory information appropriate in the setting of a trial to protect the due process rights of the accused is less compelling in the context of an application for a warrant." *Mays* at 816.

{¶ 38} In this regard, *Mays* also commented that "the non-lawyers who normally secure warrants in the heat of a criminal investigation should not be burdened with the same duty to assess and disclose information as a prosecutor who possesses a mature knowledge of the entire case and is not subject to the time pressures inherent in the warrant process. A statement of these differences does not condone deliberate misrepresentations in the warrant application process. Rather it points out that the obligations shouldered during the adjudication process should not be imposed by inference onto the warrant application process." *Id.*

{¶ 39} Based on the preceding discussion, the trial court did not err in denying Corwin a *Franks* hearing, and did not violate Corwin's rights to due process.

{¶ 40} Accordingly, the First and Second Assignments of Error are overruled.

III.   Alleged Error in Denying the Motion to Suppress

{¶ 41} Corwin's Third Assignment of Error states that:

The Trial Court Erred in Denying Appellant's Motion to Suppress Evidence.

{¶ 42} Under this assignment of error, Corwin contends that the trial court erred in denying his motion to suppress evidence gathered at Pittsfield Street, because the affidavit failed to demonstrate a fair probability that contraband or evidence of a crime would be found.   In this regard, Corwin focuses on the following facts: (1) the source of the information that he resided at the address was not disclosed; (2) Corwin's prior drug trafficking convictions (which were listed in the affidavit) occurred several years earlier; (3) the source of information about the registration of his vehicle was not in the affidavit; and (4) the date on which the observation of the 200 pounds of marijuana was observed was not included in the affidavit.

{¶ 43} As was noted, an issuing magistrate's task in determining sufficiency of probable cause " 'is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.' "   *George*, 45 Ohio St.3d at 325, 544 N.E.2d 640, paragraph one of the syllabus, quoting *Gates*, 462

U.S. at 238-239, 103 S.Ct. 2317, 76 L.Ed.2d 527.

{¶ 44} In *George*, the court further stated that: "[i]n reviewing the sufficiency of probable cause in an affidavit submitted in support of a search warrant issued by a magistrate, neither a trial court nor an appellate court should substitute its judgment for that of the magistrate by conducting a *de novo* determination as to whether the affidavit contains sufficient probable cause upon which that court would issue the search warrant." (Citation omitted.) *Id.* at paragraph two of the syllabus. "Rather, the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed. In conducting any after-the-fact scrutiny of an affidavit submitted in support of a search warrant, trial and appellate courts should accord great deference to the magistrate's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant." *Id.*

{¶ 45} In upholding the warrant for Pittsfield, the trial court observed that it was a "close call," but concluded that the observation of the 200 pounds of marijuana, even without a time frame, provided a sufficient basis for the probable cause determination.

{¶ 46} After reviewing the record and applicable law, we agree with the trial court. This observation, coupled with the other detailed information about Corwin's significant participation in a large-scale drug trafficking operation, justified a conclusion that a search of his residence would, in fair probability, reveal contraband or evidence of a crime.

{¶ 47} Notably, the trial court went on to find that even if probable cause was not established, the motion should be overruled under the good faith exception to suppression. "Where * * * it has been determined that the magistrate did not have a substantial basis for finding probable cause for the issuance of a search warrant, the

applicability of the good faith exception turns on whether the police officer's reliance on the magistrate's probable cause determination and on the technical sufficiency of the warrant was objectively reasonable." *State v. Klosterman*, 114 Ohio App.3d 327, 332, 683 N.E.2d 100 (2d Dist.1996), citing *United States v. Leon*, 468 U.S. 897, 922, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). *See also State v. Wilmoth*, 22 Ohio St.3d 251, 490 N.E.2d 1236 (1986), paragraph one of the syllabus; *State v. Castagnola*, 145 Ohio St.3d 1, 2015-Ohio-1565, 46 N.E.3d 638, ¶ 92.

{¶ 48} In light of our prior discussion, we must conclude that Detective Schweitzer's reliance on the judge's probable cause determination and the technical sufficiency of the warrant was objectively reasonable. As was noted, the detective was not aware of the alleged falsity (if, indeed, the statement was false), and did not act in reckless disregard of a falsity. Instead, he reasonably relied on the facts before him, and on the issuing judge's decision to issue the warrant. Accordingly, the Third Assignment of Error is overruled.


IV. Conclusion

{¶ 49} All of Corwin's assignments of error having been overruled, the judgment of the trial court is affirmed.


. . . . . . . . . . . .

DONOVAN, P.J. and FAIN, J., concur.


Copies mailed to:

Mathias H. Heck, Jr.
Christina E. Mahy
Gary Schaengold
Hon. Mary Katherine Huffman