[Cite as *State v. Blaylock*, 2011-Ohio-4865.]

### IN THE COURT OF APPEALS OF OHIO
### SECOND APPELLATE DISTRICT
### MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 24475 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 05-CR-289 |
| v. | : | |
| | : | (Criminal Appeal from |
| SCOTT A. BLAYLOCK | : | Common Pleas Court) |
| | : | |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 23rd day of September, 2011.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by LAURA M. WOODRUFF, Atty. Reg. #0084161, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
　　　　Attorney for Plaintiff-Appellee

GEORGE A. KATCHMER, Atty. Reg. #0005031, 108 Dayton Street, Yellow Springs, Ohio 45387
　　　　Attorney for Defendant-Appellant

. . . . . . . . . . . . .

FAIN, J.

{¶ 1}　Defendant-appellant Scott A. Blaylock appeals from an order overruling his motion to withdraw his plea of guilty to Unlawful Sexual Conduct with a Minor, in violation

of R.C. 2907.04(A). Blaylock contends that the trial court erred in applying a manifest-injustice test for his motion. Blaylock argues that an omission of a fact in the probable-cause affidavit in support of the search warrant is a fundamental flaw in the path of justice and, therefore, he should have been able freely to withdraw his plea. Blaylock also argues that his trial counsel's failure to have made him aware of that omission before he pled guilty constituted ineffective assistance of counsel.

{¶ 2} We conclude that the trial court complied with Crim. R. 32.1 in overruling his motion to withdraw his plea. We further conclude, as we have before, that Blaylock's trial counsel was not constitutionally ineffective.

I

{¶ 3} We adopt the facts set forth in our opinion deciding Blaylock's appeal from the trial court's 2008 denial of Blaylock's previous motion to withdraw his plea:

{¶ 4} "In January 2005, Defendant was arrested on a complaint filed in Kettering Municipal Court charging him with one count of forcible rape, a first degree felony, and two counts of unlawful sexual conduct with a minor, third degree felonies. Prior to any indictment being issued, Defendant's counsel, Steve Pierson, engaged in successful plea negotiations with the State which resulted in a plea agreement, whereby Defendant agreed to plead guilty to a bill of information charging a single count of unlawful sexual conduct with a minor in violation of R.C. 2907.04(A), a felony of the third degree. There were no agreements or promises as to Defendant's sentence or his sexual offender classification. On February 11, 2005, the trial court accepted Defendant's guilty plea to one count of unlawful sexual conduct

with a minor. On April 15, 2005, the trial court sentenced Defendant to the minimum prison term, one year, and classified him as a sexually oriented offender.

{¶ 5} "Defendant completed his one year sentence and was released from prison on or about January 15, 2006. On November 26, 2007, Defendant filed a motion to withdraw his guilty plea. As grounds for his motion, Defendant alleged that he received ineffective assistance of counsel in entering his guilty plea, and that a conflict of interest existed on the part of the judge who accepted his plea and imposed a sentence, the Honorable Dennis Langer, who had personal knowledge about Defendant's previous conviction for telephone harassment and improperly used that information and the prior conviction as an aggravating factor in sentencing Defendant in this case. Following an evidentiary hearing, on April 21, 2008, the trial court overruled Defendant's motion to withdraw his guilty plea. The trial court concluded that Defendant had been represented by a highly experienced, competent counsel, that Defendant knowingly, intelligently and voluntarily entered his guilty plea, and that Defendant failed to demonstrate any conflict of interest on the part of Judge Langer." *State v. Blaylock*, Montgomery App. No. 22761, 2009-Ohio-3514, at ¶ 2-3.

{¶ 6} In the previous appeal, we ruled that the "Defendant [had] failed to demonstrate any deficient performance by his counsel, much less any resulting from prejudice." Id., at ¶ 19. Furthermore, we held that "Defendant [had] failed to demonstrate any conflict of interest or impropriety on Judge Langer's part, or that Defendant's previous employment in the prosecutor's office had any impact on his sentence in this case." Id., at ¶ 23.

{¶ 7} In 2010, Blaylock filed another motion to withdraw his plea. This motion was

overruled, without a hearing. From the order overruling his 2010 motion to withdraw his plea, Blaylock appeals.

## II.

{¶ 8} Blaylock's First Assignment of Error is as follows:

{¶ 9} "THE TRIAL COURT ERRED IN DENYING THE APPELLANT A HEARING ON HIS MOTION TO WITHDRAW PLEA SINCE HIS PLEA WAS NOT KNOWING, INTELLIGENT OR VOLUNTARY."

{¶ 10} "The Rules of Criminal Procedure permit a defendant to withdraw a guilty plea. 'A motion to withdraw a plea of guilty or no-contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea.' Crim.R. 32.1. The rule distinguishes motions to withdraw based on timing-those filed before sentence and those filed after sentence. This is so principally for policy reasons. 'This distinction rests upon practical considerations important to the proper administration of justice. Before sentencing, the inconvenience to court and prosecution resulting from a change of plea is ordinarily slight as compared with the public interest in protecting the right of the accused to trial by jury. But if a plea of guilty could be retracted with ease after sentence, the accused might be encouraged to plead guilty to test the weight of potential punishment, and withdraw the plea if the sentence were unexpectedly severe.' *Kadwell v. U.S.* (C.A.9, 1963), 315 F.2d 667, 670; see, also, *State v. Long* (May 13, 1993), Montgomery App. No. 13285, 1993 WL 155662, at *17." *State v. McComb*, Montgomery App. Nos. 22570, 22571, 2008-Ohio-295.

{¶ 11} The movant seeking to withdraw a guilty plea after sentence is imposed has the burden to demonstrate that a manifest injustice occurred. *State v. Powell* (2010), 188 Ohio App.3d 232, 238; see Crim. R. 32.1. Manifest injustice is a flexible concept and depends on the facts and circumstances in each case. *State v. Smith* (1977), 49 Ohio St.2d 261, 264, 361 N.E.2d 1324. Withdrawal of a guilty plea after sentencing is permitted only in extraordinary cases. *Id.* The decision of whether to grant a motion to withdraw a plea is confided to the trial court's discretion and will not be disturbed on appeal absent abuse of that discretion. *McComb*, *supra*.

{¶ 12} Blaylock argues he should be able to withdraw his guilty plea because he was unaware of an omission in the affidavit in support of the search warrant in this case. Blaylock argues that these omissions indicate that the police officer affiant did not believe all of the statements made by the victim. This, argues Blaylock, is a violation of *Franks v. Delaware* (1978), 428 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667.

{¶ 13} In *Mays v. City of Dayton* (1998), 134 F.3d 809, the United States Court of Appeals for the Sixth Circuit dealt with a similar issue. A Dayton, Ohio, police detective had received information regarding a physician who was trafficking pills and drug prescriptions. Id., at 811. At that time, the detective was made aware of a similar, simultaneous investigation being conducted by federal authorities involving Medicare fraud. The physician was arrested and explained to the police that his father was also involved. Id., at 812. As a basis for a finding of probable cause for a second search warrant, the detective recounted a number of pertinent facts in his affidavit supporting the second search warrant. Pursuant to the second search, the police searched the father's residence and found, among other things,

patient files listed in the affidavit and illegal drugs. But the affidavit contained no information concerning the nature of the illegal drugs, the probability that all 502 seized files contained evidence of Medicare fraud, or whether the files had any connection to the physician. Id*.,* at 814.

{¶ 14} The father, also a doctor, sued the police officer who conducted the search, the former chief of police, and the City of Dayton, contending that the search violated his civil rights. The trial court denied the defendants' motion for summary judgment, holding, in the alternative, that the police officer's omission, in the affidavit in support of the search warrant, of the fact that he had attempted unsuccessfully to get the father to write a prescription for the officer and his wife "raised the potential of a *Franks* violation." Id., at 815.

{¶ 15} The Sixth Circuit held that a *Franks* hearing based on omissions from an affidavit in support of a search warrant is merited "only in rare instances" because "affidavits with potentially material omissions, while not immune from *Franks* inquiry, are much less likely to merit a *Franks* hearing than are affidavits including allegedly false statements." Id. Because affidavits are drafted in the middle and during the rush of a police investigation, the Sixth Circuit noted, "an affiant cannot be expected to include every piece of information gathered in the course of an investigation." Id. In determining that no violation occurred, the court set forth a test for omissions triggering a *Franks* inquiry: "[E]xcept in the *very* rare case where the defendant makes a strong preliminary showing that the affiant *with an intention to mislead* excluded critical information from the affidavit, and the omission is critical to the finding of probable cause, *Franks* is inapplicable to the omission of disputed facts." Id., at 816. (Emphasis in original.)

**{¶ 16}** We adopt this test for whether the omission of facts from an affidavit in support of a search warrant triggers a duty on the part of the trial court to conduct a *Franks v. Delaware* inquiry. In applying this test, we must first analyze whether Blaylock has shown that the affiant omitted facts with an intent to mislead the magistrate who issued the search warrant. Blaylock argues only that the facts omitted "would have negatively impacted the decision to issue a warrant"; he does not argue that the facts were omitted with an intent to mislead.

**{¶ 17}** The police report in the record shows only that Detective Stewart, the police officer who executed the search warrant affidavit, did not believe the complainant's initial version of the events that led to his having come into contact with Blaylock. According to this version, the complainant began receiving prank phone calls to his house. "The calls started off as hang ups and when [the complainant] asked the person to stop calling[,] the person told him he would hurt his family. The person then said that [the complainant] had to meet him or he would hurt his family." This led to the meeting that resulted in the sexual assault.

**{¶ 18}** The complainant told Detective Stewart that after the assault, he began receiving phone calls at home, and that his sister began receiving phone calls on her cell phone. This led Detective Stewart to become skeptical concerning the complainant's version of how he and Blaylock met:

**{¶ 19}** "I told [the juvenile complainant] that there is no way that Scott [Blaylock] could have known his sister[']s cell phone [number] without [the complainant] or someone else giving him the number. I told [the complainant] that I did not think he was telling the

truth on how he met this Scott. [The complainant] paused for a moment[,] started to tear up[,] and said[, '] I will tell you the truth. I am just afraid I will be judged. I go to church and I am a Christian.['] I asked that he tell me the truth.

{¶ 20} "[The complainant] then proceeded to advise that he was watching the WB (Warner Brothers Television). He saw an advertisement for Interactive Personals. He called the number[,] set up a free account with a message that he wanted to meet people in the Kettering/Centerville area. Around 2 pm on 11-16-05 he was checking his messages and he was asked if he wanted to be directly connected to someone. He was connected to Scott. They talked for a while and [the complainant] was curious about gay sex. He agreed to meet with Scott at the Meijer. They gave descriptions of each other, met and the above described incident happened. Once it started happening [the complainant] was scared and did not want to continue and told him to stop and that's when Scott forced him down to suck his penis. Scott did threaten to hurt [the complainant's] family.

{¶ 21} "Once [the complainant] got home he started receiving hang up phone calls from Scott and even spoke to him one time. During the conversations Scott said 'Ben [an assumed name the complainant had given Blaylock] you really did someone dirty it's all your fault.' [The complainant] called Scott on his sister's * * * cell phone XXX-XXXX and told Scott to quit calling. Scott then started calling [complainant's sister's] cell phone."

{¶ 22} We find nothing in the police report, or anywhere else in the record, to indicate that Detective Stewart was skeptical of any aspect of the complainant's version of events other than the complainant's initial version of how he and Blaylock had come into contact with one another. That limited skepticism on Detective Stewart's part did not concern the crux of the

complainant's relation of the offense, which was set forth in the affidavit for the search warrant, and was material to the finding of probable cause for the search.

{¶ 23} We find it unlikely that Detective Stewart intended to mislead the issuing magistrate by omitting his skepticism concerning the complainant's initial version of the events that brought the complainant into contact with Blaylock. Detective Stewart had nine years of experience as a police officer, had investigated similar crimes numerous times, had attended seminars regarding criminal investigation techniques and interview methods, and had two years of experience, at the time of his affidavit, investigating sexual crimes involving juveniles. More importantly, Detective Stewart had no incentive to mislead the issuing magistrate – if the omission had been included in the affidavit, there would still have been abundant probable cause for a search.

{¶ 24} We also find that the omitted facts were not critical to the finding of probable cause. Detective Stewart's skepticism extended only to the complainant's version of how he came to meet Blaylock. That skepticism did not extend to the complainant's recounting of Blaylock's sexual assault.

{¶ 25} We conclude that no *Franks v. Delaware* violation occurred; there was no manifest injustice; and the trial court did not err when it overruled Blaylock's motion to withdraw his guilty plea without a hearing. Blaylock's First Assignment of Error is overruled.

III

{¶ 26} Blaylock's Second Assignment of Error is as follows:

{¶ 27} "A PLEA MUST BE VACATED WHERE BUT FOR THE INEFFECTIVE ASSISTANCE OF COUNSEL THE PLEA WOULD NOT HAVE BEEN ENTERED."

{¶ 28} Counsel's performance will not be deemed ineffective unless and until counsel's performance is shown to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance. *Strickland v. Washington* (1984), 466 U.S. 688, 104 S. Ct. 2052, 80 L.Ed.2d 674. To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must demonstrate that were it not for counsel's errors, the result of the trial would have been different. Id.; *State v. Bradley* (1989), 42 Ohio St.3d 136.

{¶ 29} Blaylock argues that his counsel was ineffective because he did not show him the police record containing the statements omitted from the affidavit in support of the search warrant. We considered a claim of ineffective assistance of trial counsel in our opinion in the first appeal in this case:

{¶ 30} "We agree with the trial court that Defendant's counsel, * * *, is a very experienced criminal defense attorney. At the hearing on Defendant's motion to withdraw his plea, [defense counsel] testified that he discussed the strengths and weaknesses of this case and possible defenses to the charges with Defendant. The original charges were rape, a first degree felony carrying three to ten years imprisonment, plus two counts of unlawful sexual conduct with a minor, both third degree felonies each carrying a one to five year sentence. As a result of defense counsel's successful negotiation, Defendant was offered a favorable deal to plead guilty to just one count of unlawful sexual conduct with a minor, rather than face indictment on the original greater charges. [Defense counsel] testified that Defendant desired

to pursue a plea to offenses less serious than rape." *State v. Blaylock*, 2009-Ohio-3514, ¶ 15.

{¶ 31} For the reasons set forth in Part II, above, we conclude that Detective Stewart's skepticism concerning the victim's initial account of the manner in which he and Blaylock came into contact, which was omitted from the affidavit in support of the search warrant, was neither material to the magistrate's finding of probable cause, nor intentionally omitted. Accordingly, Blaylock's trial counsel's failure to have communicated that skepticism to his client was neither ineffective assistance, nor prejudicial. It did not constitute manifest injustice upon which the post-sentence withdrawal of a plea must be predicated.

{¶ 32} Blaylock's Second Assignment of Error is overruled.


IV

{¶ 33} Both of Blaylock's assignments of error having been overruled, the order of the trial court overruling his 2010 motion to withdraw his plea is Affirmed.

. . . . . . . . . . . . .


GRADY, P.J., and FROELICH, J., concur.


Copies mailed to:

Mathias H. Heck
Laura M. Woodruff
George A Katchmer
Hon. Dennis J. Adkins