[Cite as *State v. Starks*, 2019-Ohio-2842.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 28158 |
| | : | |
| v. | : | Trial Court Case No. 2017-CR-3331 |
| | : | |
| MICHAEL A. STARKS | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 12th day of July, 2019.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by MICHAEL P. ALLEN, Atty. Reg. No. 0095826, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, 5th Floor, Dayton, Ohio 45422
     Attorney for Plaintiff-Appellee

BRIAN A. MUENCHENBACH, Atty. Reg. No. 0088722, 309 North Barron Street, Eaton, Ohio 45320
     Attorney for Defendant-Appellant

. . . . . . . . . . . . .

HALL, J.

{¶ 1} Michael A. Starks appeals from his conviction and sentence following a no-contest plea to charges of improper handling of a firearm in a motor vehicle (F4), aggravated drug possession (F1), and possession of drug paraphernalia (M4).

{¶ 2} Starks advances four assignments of error. First, he challenges the trial court's denial of his motion to suppress evidence seized during a traffic stop. He argues that the stop for a single marked-lane violation was unlawful and, therefore, that evidence discovered after an officer approached the car and smelled marijuana was subject to suppression. Second, he contends the trial court erred in denying his motion for a hearing under *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), to challenge a search-warrant affidavit for a motel room he was renting. He also contends the trial court erred in denying his motion to suppress evidence found in the motel room. Third, he claims the trial court erred in denying his motion for a continuance after he retained new counsel. Fourth, he alleges ineffective assistance of counsel based on counsel's handling of the motion to suppress related to the traffic stop and the motion for a *Franks* hearing regarding the affidavit for a warrant to search his motel room.

{¶ 3} The charges against Starks stemmed from a traffic stop of a car he was driving around 1:00 a.m. on October 19, 2017. Suppression-hearing testimony from Miamisburg police officer Nicholas Bell reflects that Bell and his partner saw Starks cross the line dividing two southbound lanes of Byers Road in Miamisburg. Starks crossed the dividing line while going around a curve and stayed in that position through the curve before going back in the right-hand lane. The officers followed Starks into the parking lot of a Knights Inn motel. They initiated a traffic stop based on a marked-lane violation of

R.C. 4511.33. As the cruiser came to a stop with its overhead lights activated, Starks' front-seat passenger, Cheree Alexander, exited Starks' car. Bell got out of the cruiser and ordered her back into Starks' car. Bell then approached the stopped vehicle and detected an odor of raw marijuana. As he got closer, he determined that the odor was coming from inside Starks' car. Bell asked for the passenger's identification, and she retrieved her purse from behind the driver's seat. She then placed the purse on her lap and opened it, exposing the contents to Bell, who saw a baggie of suspected marijuana. Bell seized the purse, and Starks' car was searched. A loaded handgun was found under the driver's seat. Police also found jewelry and collectible coins in the vehicle. A detective subsequently submitted a search-warrant affidavit and obtained a warrant to search a Knights Inn motel room that Starks had rented. After obtaining the warrant, police searched the room and found a large quantity of methamphetamine.

{¶ 4} Following his indictment, Starks moved to suppress evidence obtained as a result of the traffic stop. He argued that police had no basis for the stop. (Doc. #12.) He also separately moved to suppress evidence found inside the motel room on the grounds that the search warrant was issued without probable cause. (Doc. # 26.) Additionally, Starks moved for a *Franks* hearing. He argued that the search warrant affidavit omitted Cheree Alexander's statement to officers that the she was in the process of moving and that the jewelry and collectible coins in Starks' car, as well as other items, belonged to her. (Doc. # 39.) The trial court denied both suppression motions after a hearing and declined to hold a *Franks* hearing. (Doc. # 29, 42.)

{¶ 5} Just days before Starks' scheduled August 20, 2018 trial date, newly retained counsel filed a "Limited Notice of Substitution of Counsel and Motion to Continue Trial."

(Doc. # 57.) Prior to this filing, Starks had been represented solely by appointed counsel. In the filing, retained counsel entered an appearance as Starks' attorney of record "contingent upon the granting of a continuance." (Doc. # 57.) Retained counsel explained that he had just been retained and that he needed more time to prepare. (*Id.*) The following day, Starks' appointed counsel moved to withdraw, citing "a breakdown in attorney client communication[.]" (Doc. # 58.) That same day, retained counsel filed a notice of "appearance as co-counsel for Defendant[.]" (Doc. # 59.) On August 23, 2018, the trial court filed an order formally continuing the trial date until August 27, 2018. It also overruled appointed counsel's motion to withdraw. (Doc. #65.) Less than an hour after this ruling, retained counsel moved to continue the scheduled August 27, 2018 trial date. (Doc. #66.) The parties then discussed the issue with the trial court on the record on August 24, 2018. At that time, the trial court noted the existence of retained counsel's renewed motion to continue filed the prior day. (August 24, 2018 Hearing Tr. at 54.) The trial court noted that it already had granted a one-week continuance for retained counsel to explore whether "there may be issues that would ultimately lead to a resolution of the case." (Id. at 55-56.) Retained counsel responded: "That's correct, Your Honor. And it's my understanding at this time we are prepared to withdraw our prior plea of not guilty and enter a plea today." (*Id.* at 56.)

{¶ 6} Starks then entered a negotiated no-contest plea to the charges against him in exchange for an agreed four-year mandatory sentence. The trial court accepted the plea and made findings of guilt. (*Id.* at 71.) At the conclusion of the plea hearing, appointed counsel sought to withdraw from further representation, and the trial court granted the request. (*Id.* at 72.) Starks subsequently appeared for sentencing with retained counsel,

and the trial court imposed the agreed aggregate four-year prison sentence. (*Id.* at 75.) On October 1, 2018, the trial court filed an amended termination entry journalizing Starks' conviction and sentence. (Doc. # 82.) This appeal followed.

{¶ 7} In his first assignment of error, Starks challenges the trial court's denial of his motion to suppress evidence found during the traffic stop in the Knights Inn parking lot. He argues that a single "lane departure" did not justify a traffic stop, as a matter of law. Therefore, he claims that the stop was illegal and that officer Bell would not have smelled marijuana or seen it in Alexander's purse but for the unlawful stop. Because the marijuana provided the basis to search Starks' vehicle, he reasons that the search itself was illegal and all evidence obtained as a result of the stop should have been suppressed.

{¶ 8} Upon review, we find Starks' argument to be without merit. The Ohio Supreme Court has held that "a traffic stop is constitutionally valid when a law-enforcement officer witnesses a motorist drift over the lane markings in violation of R.C. 4511.33, even without further evidence of erratic or unsafe driving." *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 25. Here Bell presented uncontroverted testimony that Starks crossed over the dividing line between two lanes while going around a curve and stayed in that position through the curve before going back in the right-hand lane. (January 19, 2018 Tr. at 11-12.) Bell made a traffic stop because he believed Starks' act of failing to maintain a single lane of travel constituted a marked-lane violation under R.C. 4511.33. (*Id.* at 14-15.) Bell was correct. Under R.C. 4511.33(A)(1), a vehicle "shall be driven, as nearly as is practicable, entirely within a single lane[.]" At a minimum, Bell's observation of Starks crossing over the dividing line between two lanes while going around a curve provided reasonable, articulable suspicion

justifying a stop for a marked-lane violation. *Compare State v. Andrews*, 2017-Ohio-1383, 89 N.E.3d 157, ¶ 53 (2d Dist.) (holding that even a de minimis violation of the marked-lane statute by driving into an adjacent lane by half a tire width provided reasonable, articulable suspicion for a traffic stop).

{¶ 9} In opposition to our conclusion, Starks cites *State v. Grenoble*, 12th Dist. Preble No. CA2010-09-011, 2011-Ohio-2343. But his reliance on *Grenoble* is misplaced. In that case, the Twelfth District rejected the defendant's assertion "that one marked lane violation is an insufficient basis for an officer to stop a motorist." *Id.* at ¶ 16. The Twelfth District characterized this argument as "misguided" in light of the Ohio Supreme Court's holding in *Mays. Id.* The fact that the defendant in *Grenoble* drove outside of his marked lane multiple times while also driving too slowly does not mean that a defendant cannot be stopped for a single marked-lane violation. *Mays* makes clear that the traffic stop in Starks' case was lawful.

{¶ 10} Because the traffic stop was proper, Bell lawfully approached Starks' vehicle and detected the smell of raw marijuana. According to Bell, he had smelled marijuana in its raw and burnt forms approximately 1,000 times over his nearly 15-year career. (January 19, 2018 Tr. at 16-17.) Bell determined the smell was emanating from Starks' vehicle. (*Id.* at 17.) When he asked for passenger Alexander's identification, she opened her purse and he saw a suspected baggie of marijuana on top. (*Id.* at 18.) Bell's detection of the odor of marijuana and his observation of marijuana in Alexander's possession gave him probable cause to search the vehicle. *State v. Moore*, 90 Ohio St.3d 47, 48, 734 N.E.2d 804 (2000) (holding that "the smell of marijuana, alone, by a person qualified to recognize the odor, is sufficient to establish probable cause to search a motor

vehicle"). Accordingly, the first assignment of error is overruled.

{¶ 11} In his second assignment of error, Starks contends the trial court erred in denying his motion for a *Franks* hearing and his motion to suppress evidence found in his motel room, citing *Franks*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667.

{¶ 12} "Pursuant to *Franks*, a search violates the Fourth Amendment's prohibition on unreasonable searches if it is conducted pursuant to a warrant that is based upon an affidavit containing one or more material misrepresentations, and these misrepresentations were made knowingly or in reckless disregard for the truth." (Citations omitted.) *State v. Miser*, 2d Dist. Montgomery No. 25105, 2013-Ohio-1583, ¶ 12. " 'Reckless disregard' means that the affiant had serious doubts of an allegation's truth. * * * Omissions count as false statements if 'designed to mislead, or * * * made in reckless disregard of whether they would mislead, the magistrate.' " (Citations omitted.) *Id.* " '[E]xcept in the very rare case where the defendant makes a strong preliminary showing that the affiant with an intention to mislead excluded critical information from the affidavit, and the omission is critical to the finding of probable cause, *Franks* is inapplicable to the omission of disputed facts.' " (Citation omitted.) *State v. Blaylock*, 2d Dist. Montgomery No. 24475, 2011-Ohio-4865, ¶ 15.

{¶ 13} "[W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." *Franks* at 155-156. "In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a

preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." *Id.* at 156.

{¶ 14} When assessing the sufficiency of probable cause in a search warrant affidavit, the issuing judge must determine whether there is a fair probability that contraband or evidence of a crime will be found in a particular place. *State v. Hale*, 2d Dist. Montgomery No. 23582, 2010-Ohio-2389, ¶ 16. The duty of a reviewing court is simply to assure that the issuing judge had a "substantial basis" for finding probable cause. *Id.* at ¶ 18.

{¶ 15} In the present case, Detective M.S. Aiken provided an affidavit for a warrant to search Starks' motel room. (State's Exhibit 1.) After setting forth his qualifications and experience, Aiken detailed the circumstances of the traffic stop and officer Bell's observation of marijuana in Alexander's purse. Aiken averred that Starks had rented room 231 for two weeks. He also averred that Starks had a cell phone and two "wads" of cash in his pocket at the time of the traffic stop. One "wad" contained $3,967 and the other contained $3,660. Aiken further stated that a loaded, nine-millimeter handgun was found under Starks' car seat. The handgun previously had been reported stolen in a burglary. Detective Aiken averred as follows about a search of Starks' car:

11. Officers located a black book bag in the backseat of the vehicle. Inside the book bag were two containers of sandwich baggies. One of the plastic baggie containers was a 150 count and the other container was 100, and both were opened. Paperwork for Cheree [Alexander] was inside the book

bag, along with a cell phone, and there was the odor of Marijuana. The sandwich baggies located in the book bag were the same style of baggy that contained the Marijuana in Cheree's purse.

12. Officers located a small amount of loose Marijuana shake in the front passenger floorboard.

13. Officers searched the trunk of the vehicle and located a cardboard tube which contained numerous collectable coins and bills. They also located a Pandora bag which contained several jewelry boxes with Pandora jewelry and one Helzberg Diamond box containing a pair of diamond earrings. There was also a gun lock located in the trunk.

(Aiken affidavit at ¶ 11-13.)

{¶ 16} Aiken further stated that he had spoken with Alexander, who told him Starks lacked "a steady job" but did perform "odd jobs." Alexander also told him she had been living with Starks in room 231. According to the affidavit, the handgun found in Starks' car was one of several weapons stolen from a home in Clermont County, and the brother of the victim of that crime was a drug addict who was attempting to sell the firearms on Facebook. Detective Aiken then averred:

17. It has been my experience that those addicted to drugs will often trade guns and stolen property for drugs and/or cash to purchase drugs. Based on the above information, it is believed that Michael [Starks] and Cheree [Alexander] are possibly selling drugs. It is believed that they are possibly involved in illegal drug activity because there was a stolen firearm in the vehicle, Michael had two large amounts of cash on his person and he was

reported not to have a stable job, and there was a cell phone along with a number of plastic sandwich baggies in a book bag that smelled of marijuana. There were also collectible coins and jewelry in the trunk of the vehicle, which, in my experience, is often stolen and used to trade for drugs and/or cash to purchase drugs. It is also common for those involved in the illegal drug trade to stay at the Knights Inn or the Red Roof Inn, in Miamisburg for several consecutive days.

18. Based on the above information, I am requesting a search warrant for room 231 of the Knights Inn in an attempt to locate any of the other stolen firearms[.] * * * I am also requesting to search the room for any drugs, drug paraphernalia, and/or evidence of drug trafficking based on the above information.

(*Id.* at ¶ 17-18.)

{¶ 17} On appeal, Starks contends Aiken omitted from his affidavit a statement by Alexander to investigating officers that the personal property in the vehicle belonged to her. Starks supported this argument below with an affidavit from Alexander. In that affidavit, which accompanied the motion for a *Franks* hearing, Alexander averred in relevant part:

3. Later, during the investigation about the contents of the car, I told a police officer that I was in the process of moving out of my mother's home and the cardboard tube which contained numerous collectable coins and bills, the Pandora Bag which contained several jewelry boxes with Pandora jewelry and the Helzberg Diamond Box containing diamond earrings was hers was

mine [sic]. Also in the car were my clothes, shoes, birth certificate, personal files, school transcripts, her tablet, medical records and work uniforms.

(Affidavit, Doc. # 40.)

{¶ 18} Starks claims Aiken's omission from his affidavit of Alexander owning the property in the car was reckless and warranted a *Franks* hearing. Starks reasons that if the issuing judge had known the personal property in the car belonged to Alexander, then there would have been "no nexus to Room 231." Absent such a nexus, Starks argues that police were left with nothing more than a suspicion of criminal activity based on the Knights Inn generally being known for drug activity.

{¶ 19} Upon review, we see no error in the trial court's refusal to hold a *Franks* hearing or in its decision to overrule the suppression motion related to the motel room. As set forth above, omissions from an affidavit count as false statements under *Franks* if they are designed to mislead or made with reckless disregard as to whether they would mislead the issuing judge. *Miser*, 2d Dist. Montgomery No. 25105, 2013-Ohio-1583, at ¶ 12. Moreover, "*Franks* is inapplicable to the omission of disputed facts" unless the omission is crucial to the probable cause determination and the defendant makes a strong preliminary showing that the affiant acted with the intent to mislead. *Blaylock,* 2d Dist. Montgomery No. 24475, 2011-Ohio-4865, at ¶ 15.

{¶ 20} Here the trial court correctly recognized that investigating officers were not required to believe Alexander's claim that all of the personal property in Starks' car was hers. (June 8, 2018 Tr. at 48.) Starks argues on appeal that Alexander's claimed ownership has not been contradicted or challenged. The fact remains, however, that at the time of the vehicle search and the application for a warrant, the officers were not

required to accept Alexander's statement at face value. Given the totality of the circumstances—including the presence of a stolen handgun, marijuana, baggies, large quantities of currency, and Starks' extended stay at a motel known for drug activity—the officers reasonably could have doubted Alexander's story and believed that the collectable coins and jewelry in the trunk may have been stolen. Because the officers were not required to believe Alexander's claim of ownership, we are unpersuaded that the omission of that clam from Aiken's affidavit was designed to mislead or made with reckless disregard for whether it would mislead the issuing judge.

{¶ 21} The omission of Alexander's claim also was not critical to a finding of probable cause. We reach this conclusion for at least two reasons. First, even if Aiken had included Alexander's claim of ownership in his affidavit, the issuing judge would not have been required to believe the claim either. For purposes of the probable cause calculation, the issuing judge very well may have doubted Alexander's story too. Second, even accepting, arguendo, that Alexander did own the collectable coins and jewelry, Aiken's affidavit established probable cause for a search warrant without regard to those items. At the time of the traffic stop, Starks was in possession of more than $7,600 cash. A stolen and loaded handgun was under his seat. He lacked steady employment. Open containers of sandwich baggies were found in his car along with marijuana inside one such baggie. Starks had rented a room for two weeks at the Knights Inn, which was known to police for its drug activity. Without consideration of the collectable coins and jewelry, these facts established probable cause to believe evidence of drug activity would be found inside Starks' motel room. Therefore, the trial court did not err in denying Starks' request for a *Franks* hearing or in overruling his motion to suppress the evidence found

in the motel room. The second assignment of error is overruled.

{¶ 22} In his third assignment of error, Starks contends the trial court erred in denying his motion for a continuance. Specifically, he claims the trial court should have given his newly retained counsel more than one week to prepare. He argues that his previously appointed counsel had moved to withdraw, forcing retained counsel to proceed without appointed counsel, who was familiar with the case. Other than the one-week continuance the trial court granted newly retained counsel, Starks asserts that no lengthy continuances had been granted. He further argues that no significant inconvenience would have occurred if a continuance beyond one week had been granted. Finally, Starks claims he was prejudiced because the trial court's denial of a continuance beyond one week forced him to accept a plea deal rather than proceed to trial with an unprepared attorney.

{¶ 23} Upon review we find Starks' assignment of error to be unpersuasive. The record reflects that trial had been set for the week of August 20, 2018. During a final pretrial conference on August 7, 2018, Starks' appointed counsel said nothing about any breakdown in communication with his client. (Tr. at 53.) Thereafter, respective counsel appeared before the trial court on the record on August 24, 2018. The trial court noted that Starks recently had retained counsel and a one-week continuance had been granted until the week of August 27, 2018. (*Id.* at 54.) The trial court also noted that appointed counsel remained in the case as co-counsel. (*Id.*) The trial court further noted that it previously had denied a continuance beyond the one week and that retained counsel had renewed his motion for another continuance. (*Id.*) Newly retained counsel then addressed the trial court and stated that Starks' relationship with his appointed counsel had

deteriorated "to the point that effective assistance could no longer be rendered." (*Id.* at 55.) Retained counsel proceeded to explain:

> \* \* \* As such, we were hired in. Mr. Starks indicated to us again that he wanted us retained, so we entered the case.
>
> *At that point, we tried to review all discovery to the best of our ability, to either one, reach a resolution* or two, to supplement any motions that were previously filed, or ask the Court for leave to supplement those motions.
>
> Additionally, we were asking for additional time to prepare for trial, but we couldn't possibly be prepared within one week. As such, we feel that Mr. Starks' due process rights would be violated if a continuance were not granted.

(Emphasis added.) (*Id.*)

{¶ 24} The trial court responded as follows:

> All right. Thank you. In reviewing that and I'll note that your motion to continue and your retention was almost 11th hour at that trial date. And at that time the Court denied that continuance as Mr. Starks has been represented by a very, very competent counsel \* \* \* this entire time and that was the first the Court had ever heard of a potential breakdown in communication. *That so we did continue it for the one week period here in order to get you on board to see if there were issues, as he indicated that there may be issues that would ultimately lead to a resolution of the case* or review of them and that's where we're at today.

(Emphasis added.) (*Id.* at 55-56.)

**{¶ 25}** Retained counsel then replied: "*That's correct, Your Honor. And it's my understanding at this time we are prepared to withdraw our prior plea of not guilty and enter a plea today.*" (Emphasis added.) (*Id.* at 56.) As set forth above, Starks proceeded to enter a no-contest plea pursuant to a negotiated plea agreement that included an aggregate four-year prison sentence, which the trial court later imposed.

**{¶ 26}** Having reviewed the record, we see no basis for Starks' claim that the trial court's denial of a longer continuance compelled him to plead no contest. To the contrary, the transcript indicates that Starks retained counsel and obtained a one-week continuance largely to explore the possibility of settling the case through a plea deal. As quoted above, when the trial court made that observation, retained counsel responded affirmatively and advised that an agreement in fact had been reached and that Starks wanted to enter a plea. Because Starks apparently desired a plea deal and nothing in the record suggests that the trial court's resolution of the continuance issue caused him to plead no contest, Starks has failed to show how he was prejudiced by the trial court's ruling. On the record before us, then, it matters not whether the trial court abused its discretion in denying a longer continuance. In this case, we simply see no connection between the trial court's denial of a longer continuance and Starks' decision to accept a plea deal. Absent such a connection, the trial court's resolution of the continuance issue could not be anything other than harmless error, assuming, arguendo, that it was error at all. Accordingly, the third assignment of error is overruled.

**{¶ 27}** In his fourth assignment of error, Starks alleges ineffective assistance of counsel. In particular, he contends his attorney provided deficient representation by failing

to make good arguments in support of the motion to suppress evidence found in his car and the motion for a *Franks* hearing. With regard to the car, Starks claims his attorney allowed the trial court to reach an incorrect conclusion that the smell of marijuana justified a search of his car. With regard to the *Franks* issue, he argues that counsel allowed the trial court to reach an incorrect conclusion that a nexus existed between his motel room and evidence found in his car. In particular, he contends his attorney "merely mentioned the found stolen gun, and allowed opposing counsel to somewhat explain that the gun was stolen by another attempting to sell firearms stolen from his brother." (Appellant's brief at 22.)

{¶ 28} We see no ineffective assistance of counsel in either of the foregoing issues. As we explained above, the traffic stop of Starks' car was lawful, and the officer's detection of the odor of marijuana and his observation of marijuana in Alexander's possession gave him probable cause to search the vehicle. As for the *Franks* issue, the record made clear that the stolen gun under Starks' car seat had been stolen by someone else before he obtained it. We see nothing about that issue that defense counsel failed to explain. The fourth assignment of error is overruled.

{¶ 29} The judgment of the Montgomery County Common Pleas Court is affirmed.

. . . . . . . . . . . . .

FROELICH, J. and TUCKER, J., concur.

Copies sent to:

Mathias H. Heck, Jr.
Michael P. Allen
Brian A. Muenchenbach

Hon. E. Gerald Parker, Jr.