[Cite as *State v. Bell*, 2023-Ohio-1588.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
DARKE COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 2022-CA-11 |
| | : | |
| v. | : | Trial Court Case No. 22-CR-00006 |
| | : | |
| BRUCE E. BELL | : | (Criminal Appeal from Common Pleas |
| | : | Court) |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on May 12, 2023

. . . . . . . . . . .

R. KELLY ORMSBY, III and DEBORAH S. QUIGLEY, Attorneys for Appellee

JOE CLOUD, Attorney for Appellant

. . . . . . . . . . . .

TUCKER, J.

{¶ 1} Bruce E. Bell appeals from his conviction following a no-contest plea to one count of aggravated drug possession, a first-degree felony.

{¶ 2} In two related assignments of error, Bell challenges the trial court's overruling of his motion to suppress evidence obtained as result of an allegedly unlawful traffic stop

and investigative detention. Bell claims a police officer impermissibly exceeded the original purpose of the stop and unlawfully prolonged the stop prior to obtaining consent to search the vehicle and discovering drug evidence.

{¶ 3} For the reasons set forth below, we see no error in the trial court's suppression ruling. Accordingly, the trial court's judgment will be affirmed.

## I. Background

{¶ 4} In January 2022, a grand jury indicted Bell on one count of aggravated drug possession involving methamphetamine. The offense was a first-degree felony due to the quantity involved. The methamphetamine and other contraband had been found in Bell's vehicle during a traffic stop.

{¶ 5} In April 2022, Bell moved to suppress all incriminating evidence obtained as a result of the traffic stop. The matter proceeded to a July 7, 2022 suppression hearing. The only witness at the hearing was Greenville police officer Joseph Monnin. In its written suppression decision, the trial court made the following factual findings based on Monnin's hearing testimony and a recording of the traffic stop:

On January 20, 2022, the Defendant was operating a motor vehicle on West Main Street in Greenville, Darke County, Ohio, near the traffic circle. Being aware from background evidence which was 1-2 days old that this vehicle might be involved in trafficking methamphetamine, the Defendant's car was observed driving around the traffic circle by Officer Monnin. While the Defendant's vehicle was stopped at the intersection of East Main Street and Walnut Street (one block from the circle), and with the

cruiser stopped immediately behind the Defendant, Officer Monnin observed that the Defendant's rear license plate did not include the county identification sticker required by R.C. 4503.21. The Defendant was followed about eight blocks where it stopped at the Speedway gas station near Wagner Avenue.

Immediately after causing the traffic stop and notifying dispatch, a request was made for a K-9 unit. Officer Monnin then contacted the vehicle occupants, identified as Meridian Hemmelgarn (driver) and Bruce Bell (vehicle owner and front seat passenger). When talking about the reason for the traffic stop and while obtaining license and registration information, Officer Monnin smelled what he described as the odor of "raw marijuana." The Defendant was the front seat passenger who advised he possessed a medical marijuana card. On request from Officer Monnin, the Defendant pulled out a Tupperware container and displayed the marijuana inside it. The Defendant was advised that this packaging was unlawful.

The occupants were then asked if a search of the vehicle would be permitted and the Defendant agreed. With both the driver and the Defendant outside the vehicle, Officer Monnin located the marijuana inside the Tupperware container along with smoking paraphernalia and marijuana wax. These findings were explained to both occupants. The request for the K-9 unit was cancelled. Both occupants were advised they were not under arrest and *Miranda* warnings were given. The illegal nature of the marijuana

wax and the handling of the marijuana were explained.

The search continued and Officer Monnin eventually located a plastic bag in the center console with approximately $100 in $1.00 bills. Also, under the driver's seat a bank money bag and a softball sized crystal substance were located. Concluding this substance to be methamphetamine, the Defendant was questioned. He advised the items was not the driver's property; that this item would test positive for methamphetamine; and that the drug items belonged to him. The Defendant was arrested for Aggravated Possession of Drugs (methamphetamine), contrary to R.C. 2925.11(A), (C)(1)(d). Given the weight of the substance, the offense is a felony of the first degree.

July 27, 2022 Suppression Decision at 2-3.

{¶ 6} The trial court proceeded to find probable cause for a traffic stop based on the lack of a required county identification sticker on Bell's license plate. The trial court also found that the odor of raw marijuana reasonably diverted Monnin's attention from the traffic violation and allowed him to investigate the issue. During that investigation, which the trial court found lasted about two minutes, Monnin discovered another violation of the law: Bell's improper transportation of the marijuana in a Tupperware container rather than the original medical-marijuana dispensary packaging. At that point, Monnin sought consent to search the vehicle. The trial court found that Bell gave his consent approximately three minutes into the stop. The trial court held that Bell's consent was valid and that the "traffic stop" itself technically ended when Bell granted Monnin

permission to search the vehicle. The trial court found that the duration of the entire search was 17 minutes and that Bell made his incriminating statements two minutes into the search after having been *Mirandized*. Under these circumstances, the trial court found no constitutional violation with regard to the traffic stop or the search that followed it.

{¶ 7} Bell later entered a no-contest plea to the indicted charge. The trial court accepted the plea, made a finding of guilt, and imposed an indefinite prison term of three to four and one-half years to be followed by two to five years of post-release control.

## II. Analysis

{¶ 8} Bell's first assignment of error states: "The trial court erred as a matter of law when it overruled the Defendant's Motion to Suppress." The essence of Bell's argument is that Monnin unlawfully expanded and prolonged the traffic stop by turning it into a drug investigation without supporting reasonable, articulable suspicion.

{¶ 9} Bell cites suppression-hearing testimony concerning an informant's prior tip about his being involved in drug activity as well as Monnin's own prior surveillance of Bell. While conceding the lawfulness of the traffic stop based on the absence of a county identification sticker, which was required by R.C. 4503.21(A)(1), Bell argues that Monnin proceeded with an unlawful "fishing expedition" after smelling raw marijuana and despite discovering that Bell carried a medical-marijuana card. Bell argues that Monnin should have redirected his attention to Hemmelgarn, the driver, and proceeded to process the traffic stop upon learning that Bell possessed the card. Bell insists that any articulable suspicion of drug-related criminal activity dissipated after he produced the card. At that point, Bell contends Monnin improperly prolonged the traffic stop by seeking permission

to search the car for drugs. While acknowledging that the lack of a county sticker was a valid reason for a traffic stop, Bell also suggests that the sticker violation was a pretext and that Monnin's true motive was to continue investigating an "unreasonable hunch" about Bell's transporting drugs.

{¶ 10} When ruling on a motion to suppress, a trial court "assumes the role of the trier of fact, and, as such, is in the best position to resolve questions of fact and evaluate the credibility of the witnesses." *State v. Retherford*, 93 Ohio App.3d 586, 592, 639 N.E.2d 498 (2d Dist.1994). Thus, when an appellate court reviews a suppression decision, it must accept the trial court's findings of fact if they are supported by competent, credible evidence. *Id.* "Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard." *Id.*

{¶ 11} With the foregoing standards in mind, we conclude that the trial court properly overruled Bell's suppression motion. The trial court's factual findings were supported by officer Monnin's hearing testimony, which the trial court was entitled to credit. Although Bell contends Monnin's true motive for making a traffic stop was to pursue a drug investigation, he concedes that the missing county identification sticker was a legitimate reason for the stop. "A traffic violation gives an officer a reasonable articulable suspicion justifying a traffic stop, notwithstanding that the traffic stop may also have been a pretext to investigate suspected drug activity." *State v. Wilson*, 2d Dist. Montgomery No. 27673, 2017-Ohio-9317, ¶ 16. Therefore, the traffic stop itself was lawful regardless of what Monnin subjectively hoped to discover.

{¶ 12} Upon approaching the stopped vehicle, Monnin immediately detected the odor of raw marijuana. Under Ohio law, "the smell of marijuana, alone, by a person qualified to recognize the odor, is sufficient to establish probable cause to search a motor vehicle, pursuant to the automobile exception to the warrant requirement." *State v. Moore*, 90 Ohio St.3d 47, 48, 734 N.E.2d 804 (2000). Although *Moore* involved burnt marijuana, its rationale has been applied to the odor of raw marijuana as well. *See*, *e.g.*, *State v. Starks*, 2d Dist. Montgomery No. 28158, 2019-Ohio-2842, ¶ 10; *State v. Chase*, 2d Dist. Montgomery No. 25323, 2013-Ohio-2347, ¶ 23; *State v. Jones*, 4th Dist. Jackson No. 20CA9, 2022-Ohio-561, ¶ 29; *State v. Alvaranga*, 3d Dist. Marion No. 9-20-27, 2021-Ohio-1130, ¶ 20. During the suppression hearing, officer Monnin did not specifically testify about his qualifications to recognize the odor of marijuana. He simply testified that he had detected the smell of raw marijuana coming from inside Bell's vehicle. In any event, Bell did not challenge Monnin's qualifications below, and he has not raised that issue on appeal. Therefore, we have no occasion to address whether Monnin was qualified to recognize the odor of marijuana.

{¶ 13} As noted above, Bell's argument is that any existing probable cause or even articulable suspicion of a drug offense evaporated when Bell produced a medical-marijuana card. On this issue, we recognize that R.C. Chapter 3796 authorizes registered individuals to possess and use some forms of marijuana for medical purposes. This fact complicates the probable-cause or articulable-suspicion analysis where, as here, a suspect presents an investigating officer with a medical-marijuana card establishing a legal right to use marijuana. Although Bell's possession of the card unquestionably was

relevant under the totality of the circumstances, we disagree that it compelled Monnin immediately to redirect his attention to Hemmelgarn.

{¶ 14} Possession of a medical-marijuana card does not give a patient an absolute right to use and possess any quantity or form of marijuana in any manner whatsoever. In *State v. Caldwell*, 12th Dist. Butler No. 2021-02-017, 2021-Ohio-3777, the Twelfth District noted that under Ohio law a registered patient may not possess more than a 90-day supply of marijuana. That being so, the Twelfth District reasoned that a defendant's "production of his registry identification card does not necessarily defeat an officer's sufficient reason to believe criminal activity has occurred when considering the totality of the circumstances." *Id.* at ¶ 22, fn. 5. Similarly, in *State v. Burke*, 2d Dist. Montgomery No. 29256, 2022-Ohio-2166, we recognized that the Ohio Administrative Code requires medical marijuana to be kept in a secure location. In that case, we reasoned that the presence of marijuana "shake" on a suspect's clothing supported a reasonable inference that he had been violating the law even if it was medical marijuana. Of particular relevance for present purposes, we note too that Ohio Adm.Code 3796:7-2-05(G) requires patients to keep medical marijuana in "the original dispensing package with an unaltered dispensary label" or in the "container provided by a dispensary."

{¶ 15} In light of the foregoing types of restrictions on the possession of medical marijuana, we do not believe officer Monnin was required to terminate his interaction with Bell immediately upon Bell's production of a medical-marijuana card. In response to Bell's displaying the card, Monnin was entitled to ask a follow-up question, namely where the marijuana was located in the vehicle. This question related to the requirements cited

above regarding storing marijuana securely and in the original packaging or container. In order to confirm or dispel the articulable suspicion of criminal activity that arose when Monnin smelled marijuana, it was permissible for him to obtain this information to clarify the circumstances and determine whether a drug offense in fact had been committed. Indeed, the very purpose of an investigative stop under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), is to enable an officer to engage in limited questioning of an individual who reasonably is suspected of engaging in criminal activity.

{¶ 16} Contrary to Bell's argument, Monnin also did not improperly prolong the stop. An officer may extend a traffic stop upon discovering additional facts that create reasonable suspicion of criminal activity beyond the original basis for the stop. *Burke* at ¶ 30. Here Monnin's detection of the odor of marijuana gave him reasonable, articulable suspicion of unlawful drug possession, and the officer briefly prolonged the stop to investigate that issue. The trial court found that Bell produced a Tupperware container of marijuana about two minutes into the stop and consented to a search of the vehicle about one minute later. Bell does not dispute the timing of these events, and Monnin's detection of the odor of marijuana justified this brief extension of the stop. Finally, Monnin discovered the methamphetamine and other drug-related evidence while searching the car with Bell's consent. Under these circumstances, we agree with the trial court that no constitutional violation occurred. The first assignment of error is overruled.

{¶ 17} Bell's second assignment of error states: "The trial court abused its discretion when it overruled the Defendant's Motion to Suppress." Under this assignment of error, Bell challenges the trial court's decision to credit officer Monnin's testimony and

to rely on it when overruling his suppression motion. Bell contends the trial court failed to weigh Monnin's testimony about his reasons for the stop and questioning of Bell against facts suggesting that he really was pursuing a mere hunch or suspicion of drug activity. Bell contends the trial court erred in applying the facts to the law when it failed to consider the expansion of the stop beyond its original purpose as well as "[t]he resultant time delay, questioning, search and seizure of the Defendant." According to Bell, Monnin's testimony demonstrates that he had "an alternative motive for stopping the vehicle other than for the purpose of issuing citations for failure to display a county identification tag." Bell contends the trial court abused its discretion in failing to take this alternative motive into consideration when evaluating Monnin's testimony.

{¶ 18} Upon review, we find Bell's argument to be unpersuasive. At its core, the essence of Bell's argument is that the traffic stop was a pretext to investigate suspected drug activity and that the trial court should have considered this fact. As explained above, however, a "pretextual" traffic stop is not unlawful per se. Provided that an officer observes a traffic violation, the subjective reason for making a stop is immaterial. "The fact that an otherwise lawful stop may have been pretextual in the sense that the officer had some ulterior motive for making the stop, does not render the stop unlawful." *State v. Sproat*, 2d Dist. Montgomery No. 16466, 1997 WL 779121, *2 (Dec. 19, 1997), citing *Dayton v. Erickson*, 76 Ohio St.3d 3, 665 N.E.2d 1091 (1996); *State v. Lenoir*, 2d Dist. Montgomery No. 16246, 1997 WL 309370, *2 (June 6, 1997) (recognizing that "a police officer who observes a traffic violation may make a stop based upon the violation, even though the officer's purpose is to develop evidence of a more serious criminal violation").

**{¶ 19}** Here Monnin saw Bell's car being operated without a required county identification sticker on the license plate. Regardless of Monnin's subjective motivation, Bell does not dispute that the officer was entitled to make a traffic stop based on this violation of the law. After making the stop, Monnin approached Bell's car and smelled raw marijuana. This fact entitled the officer to conduct a brief investigation to determine whether a drug offense had been committed. During that investigation, which lasted just minutes, Bell produced a Tupperware container of marijuana that was being stored in violation of Ohio's medical-marijuana regulations. Bell also consented to a full search of his car, which resulted in the discovery of methamphetamine and other contraband. Under these circumstances, the trial court did not err in finding no constitutional violation and overruling Bell's suppression motion. The second assignment of error is overruled.

### III. Conclusion

**{¶ 20}** The judgment of the Darke County Common Pleas Court is affirmed.

. . . . . . . . . . . . .

LEWIS, J. and HUFFMAN, J., concur.